**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
NATURE'S PLUS NORDIC A/S and
DERMAGRUPPEN A/S,

                       Plaintiffs,

          - against -

NATURAL ORGANICS, INC., HOUSE OF
NATURE A/S, HANS KARE LUNDESTAD,
and ORGANIC HOUSE A/S,

                       Defendants.
-----------------------------------------------------------X

**ORDER**

CV 09-4256 (ADS) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

### I. PRELIMINARY STATEMENT

Nature's Plus Nordic A/S and Dermagruppen A/S (collectively, "Plaintiffs") move this Court for an Order compelling the deposition of Gerald Kessler ("Kessler"), owner and CEO of Defendant Natural Organics, Inc. ("Natural Organics") and a non-party manufacturing company named Global Health Laboratories ("Global Health"). *See* DE 101. It is the Plaintiffs' position that Kessler can provide testimony that other Natural Organics witnesses have been unable to provide. For the reasons set forth below, Plaintiffs' motion to compel is DENIED.

### II. BACKGROUND

On October 2, 2009, Plaintiffs filed this action alleging breach of contract and other related claims arising out of a sole distribution agreement ("Agreement") between Plaintiffs and Natural Organics. On January 26, 2011, Judge Spatt granted Plaintiffs' motion to amend the complaint to add Organic House A/S as a Defendant. Plaintiffs filed the Amended Complaint

that same day. According to the Amended Complaint, Nature's Plus Nordic is a distributor of skin care, makeup, and health supplements in the Nordic region while Natural Organics is a manufacturer and supplier of health supplement products sold under various trade names, including "Nature's Plus." Am. Compl. ¶¶ 15, 17. Pursuant to the Agreement, Plaintiffs were to serve as the exclusive distributor for "Nature's Plus" products in Norway, Sweden, Denmark and Finland, effective January 1, 2008, for at least the initial term of ten years. *Id.* ¶ 19. However, Plaintiffs allege that on August 6, 2009, Natural Organics terminated the Agreement on the basis that Plaintiffs failed to meet the minimum sales requirement of $600,000 for the 2008 contract year. *Id.* ¶¶ 58-61. The Agreement stated that Natural Organics appointed Plaintiffs to be "its' sole distributor for Nature's Plus products ('Products')" and that in order for Plaintiffs "to maintain the sole distributorship for the Products, [Plaintiffs] agree[] that it will purchase and pay for Products from [Natural Organics] as follows . . . ." *Id.*, Ex. 1.

On February 9, 2011, Natural Organics filed its Answer to the Amended Complaint and asserted counterclaims against the Plaintiffs. *See* DE 61. One such counterclaim arises from Natural Organics' contention that Plaintiffs materially breached the Agreement by, *inter alia*, failing to satisfy the minimum purchase requirements of the Agreement. *Id.* ¶ 275.

### III. DISCUSSION

The Federal Rules of Civil Procedure makes it abundantly clear that the scope of discovery in civil litigation is quite broad. Indeed, Rule 23 not only allows a party to obtain discovery on "any nonprivileged matter that is relevant to any party's claim or defense," but also allows a court, for good cause, to "order discovery of any matter relevant to the subject matter

2

involved in the action." Fed. R. Civ. P. 23(b)(1). Consistent with this general rule, courts have determined that even high-ranking corporate officers do not provide an exception, even where a party asserts that the officer lacks knowledge of the issues present in the litigaiton. *See Consol. Rail Corp. v. Primary Indus. Corp.*, No. 92 Civ. 4927, 1993 WL 364471, at *1 (S.D.N.Y. Sept. 10, 1993) ("Highly-placed executives are not immune from discovery. . . . [A] claim that the witness lacks knowledge is subject to testing by the examining party.").

However, "permitting unfettered discovery of corporate executives would threaten disruption of their business and could serve as a potent tool for harassment in litigation." *Id.* Therefore, when it comes to deposing a high-ranking officer, courts have concluded that "[u]nless it can be demonstrated that a corporate official has 'some unique knowledge' of the issues in the case, 'it may be appropriate to preclude a[ ] deposition of a highly-placed executive' while allowing other witnesses with the same knowledge to be questioned." *Retail Brand Alliance, Inc. v. Factory Mut. Ins. Co.*, No. 05 Civ. 1031, 2008 WL 622810, at *5 (S.D.N.Y. Mar. 7, 2008) (quoting *Consol. Rail Corp.*, 1993 WL 364471, at *1); *see also Harris v. Computer Assocs. Int'l, Inc.*, 204 F.R.D. 44, 46 (E.D.N.Y. 2001) ("Depositions of high level corporate executives may be duplicative, cumulative and burdensome where the person sought to be deposed has no personal knowledge of the events in dispute.").

Generally speaking, Plaintiffs proffer two reasons why the Court should compel the deposition of Kessler. First, Plaintiffs argue that as the CEO of Natural Organics, they are entitled to inquire as to what Kessler knows about the contract in dispute. This argument, however, is legally unsupported. Simply being the CEO of Natural Organics does not, by itself, open the door to Kessler's deposition. Instead, the Plaintiffs must demonstrate that Kessler has

3

"some unique knowledge" regarding the Agreement at issue. This, unfortunately, Plaintiffs fail to do. Kessler submitted to the Court a declaration setting forth his lack of knowledge of this lawsuit or anything else related to the Agreement.[1] *See* Decl. of Gerald Kessler ("Kessler Decl.") ¶¶ 1-3. The testimony of Natural Organics' Rule 30(b)(6) witness, James Gibbons, supports Kessler's declaration. Gibbons testified that Kessler was primarily involved with domestic sales and was not part of the group of individuals who decided to terminate the Agreement. *See* Decl. of Christopher R. Kinkade ("Kinkade Decl."), Ex. A ("Gibbons Dep.") at 67, 188. Plaintiffs, on the other hand, do not come forward with any evidence that Kessler possesses any unique knowledge regarding the Agreement to which other lower level employees of Natural Organics could not adequately testify. Nor do the Plaintiffs provide an affidavit or declaration from any employee or representative of Nature's Plus Nordic or Dermagruppen detailing any communications or interactions with Kessler regarding the Agreement or any other matter. In

---

[1] For example, Kessler states the following:

> I have not had any dealings or discussions with either of the plaintiffs named in the above caption or any other party to this lawsuit or any of their representatives. Nor have I had any discussions or communications with Natural Organics personnel about any dealings with either of the plaintiffs, the other parties or anyone affiliated with them. I have not negotiated, reviewed, executed, or otherwise been involved in any way with any agreements between Natural Organics and any other party to this lawsuit or any distributor of any of its products in any of the Scandinavian countries. I have not been involved in any communications with anyone as may concern any aspect of this case. I do not know anything about any dispute between plaintiffs and Natural Organics, including concerning any agreement that may have existed between them.

Kessler Decl. ¶ 3.

such situations, the deposition of the corporate executive is found to be cumulative and courts have not allowed the deposition to go forward. *See Harris*, 204 F.R.D at 46 ("When a vice president can contribute nothing more than a lower level employee, good cause is shown to not take the deposition.").

Second, Plaintiffs argue that they are entitled to depose Kessler based on his knowledge of the business operations and relationship between Natural Organics and Global Health. Plaintiffs go so far as to claim that he is "the only man who ties all the companies together." Whether or not Kessler contains unique knowledge as to Global Health presupposes that testimony about Global Health is relevant to this action. Plaintiffs maintain that the relationship between Natural Organics and its manufacturing facilities, such as Global Health, are highly relevant to both parties' claims and defenses since "Natural Organics has taken the position that certain of Plaintiffs' purchases do not count toward the Distribution Agreement's minimum purchase requirements because the products were manufactured by Global Health as private label products, and not by Natural Organics itself." The Court, however, does not find any support for Plaintiffs' interpretation of what Natural Organics' purported position is.

The Plaintiffs apparently believe that Paragraph 275 of Natural Organics' Answer somehow supports Plaintiffs' view of what Natural Organics' position is regarding the minimum purchase requirement in the Agreement. All that Paragraph 275 alleges is that Plaintiffs "breached the Distribution Agreement in material respects, including but not limited to failing to satisfy the minimum purchase requirements." Nowhere in the pleading is there any reference to Plaintiffs' proffered theory as to why Natural Organics claims that Plaintiffs breached the Agreement – namely, that products manufactured by Global Health did not count toward the

5

minimum purchase requirements. Natural Organics provided the Court with a copy of the relevant portion of its Supplemental Responses to Plaintiffs' First Set of Interrogatories which lays out in specific detail why Natural Organics believes the minimum purchase requirement was not satisfied by the Plaintiffs. *See* DE 104, Ex. 3 at 3-6. A portion of Natural Organics' explanation regarding the failure to meet the minimum purchase requirement is that the Plaintiffs purchased items other than "Products" – a term defined in the Agreement as "Nature's Plus" products. Lacking from Natural Organics' response is any mention of Global Health, or any other manufacturing facility. As such, there is nothing to support the position that what constituted a "Product" under the Agreement was somehow related to the manufacturer of the item.

In essence, it is the Plaintiffs' belief that Natural Organics "is playing a shell game with corporate identities that are all controlled by Natural Organics" which serves as the basis for Plaintiffs seeking to question Kessler on Global Health. However, after reviewing the deposition testimony of James Gibbons, the Court concludes that the Plaintiffs have not established Global Health's relevance to the subject matter of this action to justify the taking of Kessler's deposition. Gibbons' testimony confirmed Natural Organics' opinion that the Agreement covered only "Nature's Plus" products. *See* Gibbons Dep. at 131. Plaintiffs draw attention to a point during the deposition where Gibbons testified that Global Health manufactures all of Natural Organics' products. *Id.* at 52. Plaintiffs, however, neglect to mention Gibbons' later testimony where he states that Global Health did not manufacture any "Nature's Plus" products. *Id.* at 183-84. What is significant here regarding Gibbons' testimony is the lack of any factual basis to suggest that Plaintiffs' ability to purchase "Nature's Plus" products was somehow

impacted or dependent on information regarding when Global Health was formed, what products Global Health manufactured and what was Global Health's relationship with Natural Organics.

While the Court is aware of the parties' varying interpretations of the Agreement, the Court finds the following statement from Natural Organics to be informative, logical, and persuasive:

> NPN bought both Nature's Plus products from Natural Organics and products that were ultimately sold retail under the brand name Daily Wellness, for another company. These were the private label products that were not included in the Distribution Agreement or the minimum purchase requirements. Indeed, if such private label purchases were attributed to the minimum requirements an absolutely absurd situation could result. NPN would be able to completely shut Nature's Plus brand products out of the Scandinavian market by purchasing only *private label* products from Natural Organics and, since it would then be able to maintain the exclusive right to distribute Nature's Plus brand products simply by buying private label products, it could prevent the sale (by Natural Organics itself or by any distributor other than NPN) of any Nature's Plus brand products within the four countries covered by the Distribution Agreement for as many as 10 years, by simply buying private label products for another company to sell.[2]

DE 104 at 2. Since it was "Nature's Plus" products which Plaintiffs had to purchase to satisfy the minimum purchase requirement in the Agreement, the Court fails to see the relevance of discovery regarding Global Health.[3]

---

[2] "NPN" was Defendants' shorthand for Plaintiff Nature's Plus Nordic A/S.

[3] Even had Plaintiffs provided a sufficient basis as to why discovery regarding Global Health would be relevant, the Court would not have allowed the deposition of Kessler to go forward. For one, Kessler disclaims any knowledge regarding the activities of Global Health. *See* Kessler Decl. ¶ 4. Moreover, it is the Court's view that other witnesses have been available to provide adequate testimony regarding Global Health. While Gibbons' testimony during the August 8, 2011, deposition shows that he may not be that person, Gibbons identified another individual, James Madden, who apparently runs Global Health. *See* Gibbons Dep. at 52-53.

## IV. CONCLUSION

For the reasons set forth above, Plaintiffs' motion to compel is DENIED. The parties are directed to participate in a telephone conference on May 25, 2012 at 3:30 p.m. Plaintiffs' counsel is directed to initiate the call to Chambers.

**SO ORDERED.**

Dated: Central Islip, New York
April 30, 2012

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge